UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JESSE FRANK** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-1341** |
| **KANSAS CITY SOUTHERN RAILWAY COMPANY & F.G. SULLIVAN JR. CONTRACTOR, LLC.** | **SECTION B(1)** |

## ORDER AND REASONS

Before the Court is Defendant Kansas City Southern Railway Company's Motion for Summary Judgment. (Rec. Doc. No. 26). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED.**

### *BACKGROUND*

Plaintiff Jesse Frank was employed by Defendant Kansas City Southern Railway Company ["KCS"]. On August 9, 2006, KCS Locomotive 4821, which was operated by Plaintiff, approached the railroad grade crossing at Highway 427 in Baton Rouge, Louisiana. At this same time, Defendant F.G. Sullivan, Jr., Contractor, LLC ["F.G. Sullivan"] was performing resurfacing work on Highway 427. As the train approached the crossing, Frank noticed a piece of road milling equipment, owned by Defendant F.G. Sullivan, straddling the crossing. The milling equipment was attached to an F.G. Sullivan water truck by a 3/4 inch cable stretched between the two vehicles.

1

Frank alleges that in preparation for a collision with the equipment, he placed the train into the emergency application and moved to the floor. Before actual impact, the milling equipment cleared the crossing. The train, however, struck the cable that was stretched between the water truck and the road miller. As a result, Plaintiff sustained injuries to his left shoulder and cervical spine.

Plaintiff brought suit against F.G. Sullivan alleging negligent operation of the milling equipment. Additionally, Plaintiff brought suit against KCS alleging failure to provide a safe place to work under the Federal Employees' Liability Act. Plaintiff has since settled his claims with F.G. Sullivan. Defendant KCS has now filed this Motion for Summary Judgment.

### DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all

reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**B.   Cause of Action under the Federal Employees' Liability Act**

In order to prevail in an action under the Federal Employees' Liability Act ["FELA"], the plaintiff must prove (1) that the defendant is a common carrier by railroad engaged in interstate commerce, (2) that he was employed by the defendant with duties advancing such commerce, (3) that his injuries were sustained while he was so employed, and (4) that his injuries resulted from the defendant's negligence. *Weaver v. Missouri Pacific R.R. Co.*, 152 F.3d 427, 429 (5th Cir. 1998). Only the fourth element, Defendant KCS's potential negligence, is at issue in this case.

A prima facie claim of negligence under FELA must include all the elements found in a common law negligence action. *Armstrong v. Kansas City S. Ry. Co.*, 752 F.2d 1110, 1113 (5th Cir. 1985). Specifically, the Plaintiff must prove that the employer "with the exercise of due care, could have reasonably foreseen that a

3

particular condition could cause injury; foreseeablity is an essential ingredient of negligence under [FELA]." *Id*. The crucial element of reasonable foreseeablity in FELA actions "requires proof of actual or constructive notice to the employer of the defective condition that caused injury." *Sinclair v. Long Island R.R.*, 985 F.2d 74, 77 (2d Cir. 1993).

The Supreme Court has held that a relaxed standard of causation applies in FELA cases. *See Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994). Under this standard, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Id*. Accordingly, summary judgment against the plaintiff in a FELA case is appropriate only when there is a complete absence of probative facts supporting the plaintiff's position. *Howard v. Canadian National/Illinois Cent. R.R. Co.*, 233 Fed. Appx. 356 (5th Cir. 2007).

Plaintiff contends that factual issues exist which preclude summary judgment. First, Plaintiff contends that there is a question of fact regarding whether Defendant, in conducting its inspections in the days prior to the accident, should have known that the F.G. Sullivan resurfacing project posed a danger to the safe passage of trains. Plaintiff points out that F.G. Sullivan was conducting work on Highway 427 for at least a month prior to the accident. Additionally, F.G. Sullivan employee Charles Boyer

4

testified that during that time, on at least 2 or 3 occasions, he visually observed railroad high rail trucks on the KCS mainline track at the specific railroad crossing at issue in the case. Boyer testified that on those occasions, he was only 100 feet away from the railroad trucks and that he was wearing a bright green vest at the time. Plaintiff claims that since Boyer could see these trucks, the individuals in the trucks, who were presumably KCS employees, should have been able to see him. Thus, KCS should have been aware of F.G. Sullivan's presence in the area.

Second, Plaintiff contends that a question of fact exists as to whether the KCS train dispatcher exercised reasonable care in failing to notify Plaintiff concerning a telephone call made to the dispatcher minutes before the accident. According to the deposition testimony of John Jarreau, an F.G. Sullivan employee who was present at the scene of the accident, Jarreau called the KCS train dispatcher after the milling equipment became stuck on the track. Jarreau claims that he gave his location at the scene and asked if any KCS trains were in the vicinity. The dispatcher then told Jarreau that the train operated by Plaintiff was leaving the Baton Rouge railyard in five minutes and would be heading in his direction. At no time during the conversation with the dispatcher did Jarreau mention that equipment was obstructing the track. The accident occurred approximately four minutes after the conversation ended. Plaintiff contends that Defendant has failed to produce the name of the dispatcher that spoke to Jarreau just before the

5

accident.  Plaintiff argues that the dispatcher should have at least made Plaintiff aware that someone had identified Milepost 802 and requested the location of any KCS trains.

Finally, Plaintiff points out that Defendant has failed to produce track inspection reports for the week of Monday, July 17 to Friday, July 21, 2006.  Plaintiff argues that these missing reports might show potential hazards observed on the KCS mainline track at that time.

Defendant contends first that KCS had no prior notice of the milling work that F.G. Sullivan was conducting in the area near the crossing.  Thus, it could not have reasonably warned Plaintiff of the danger.  Defendant points to F.G. Sullivan's Answers to Defendant's Interrogatories in which F.G. Sullivan admits that it did not notify any KCS employee that it was performing work near the crossing.  Additionally, Defendant relies on the deposition testimony of James Barnes, the F.G. Sullivan Superintendent, who confirmed that neither he nor any other F.G. Sullivan employee made contact with any KCS employee before the incident.

Additionally, Defendant contends that according to the deposition testimony of several F.G. Sullivan employees, no work was done by F.G. Sullivan within five hundred feet of the crossing on either side until the day of the accident.  While KCS inspectors were responsible for inspecting the track to ensure safe passage, the scope of this duty did not include conducting inspections outside the 500 foot radius.

Finally, Defendant points out that it has produced the recorded communications of the KCS dispatcher from the date of the accident and that these recordings do not contain any evidence of a call placed by Jarreau. Additionally, Defendant contends that even if a call was placed, because the substance of the call was limited to a statement of Jarreau's location and a question as to what trains were in the vicinity but did not include any discussion concerning equipment that was blocking the track, the dispatcher did not breach any duty to the Plaintiff by failing to warn him.

Although the overall weight of the evidence presented thus far appears to favor KCS's versions of the events, the Court cannot say that there is a *complete* absence of probative facts to support Plaintiff's claim. Specifically, a genuine issue of material fact exists regarding KCS's actual or constructive notice of F.G. Sullivan's presence in the area at the time of the accident. Thus, summary judgment is not proper at this time.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED.**

New Orleans, Louisiana this 17th day of July, 2008.

_____
UNITED STATES DISTRICT JUDGE